J-S30022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAJI AMIN ABDULLAH, III | : | |
| | : | |
| Appellant | : | No. 251 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 4, 2024
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0001943-2021

BEFORE:   PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED: FEBRUARY 7, 2025**

Taji Amin Abdullah, III ("Abdullah") appeals from the judgment of sentence following his conviction for persons not to possess firearms.[1] Additionally, Abdullah's counsel ("Attorney Bradley") has filed an application to withdraw from representation along with an **Anders** brief.[2] Following our review, we grant the application and affirm the judgment of sentence.

The trial court set forth the following factual and procedural history of the case:

> [I]n March [] 2021, at approximately 5:00 p.m., the Harrisburg Bureau of Police was dispatched to the area of 5th and Forrest Streets for a report of shots fired. Officer Joseph Giovenvo [("Officer Giovenvo")], one of the first officers on the scene,

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 6501(a)(1).

[2] **See Anders v. California**, 386 U.S. 738 (1968); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

observed shell casings and blood on the ground next to a red minivan and established the surrounding area as the crime scene.

Further investigation uncovered two [] different locations of spent shell casings. In total, the police identified five [] .45 caliber casings and nineteen [] 9-millimeter Luger casings. Significant damage from bullets was observed on the minivan. Specifically, it apparently incurred gunfire to both sides of the rear windshield and the rear of the right-side of the vehicle.

The police towed the minivan and obtained a warrant to conduct a more thorough search. Three [] bullets were located inside the minivan. Suspected blood was identified on the driver's side door, the passenger side arm rest, and the third-row seat. The other relevant items discovered inside the minivan were a Pennsylvania registration plate, and mail addressed to Julio Alberto Arellano [("Arellano"). Who Arellano is, and his relation to these events, were never explained.]

The registration plate did not match the Vehicle Identification Number (["]VIN["]). . . . [T]he explanation for the discrepancy is unknown . . ..

At the time of trial in 2023, approximately two and one-half [] years after the incident, the minivan was owned by Dnasia Peterson [("Peterson")]. Dauphin County Probation Officer Daniel Kinsinger [("Officer Kinsinger")], [Abdullah's] probation officer in 2021, testified that, at that time, . . . Peterson was [Abdullah's] girlfriend, and that they resided together. In fact, on March 3, 2021, eighteen [] days before the date of the shots fired call, Officer Kinsinger visited [Abdullah] at that residence, and later that day he saw him on the street driving a red minivan[,] and memorialized it in his case notes. Police ultimately learned that . . . Peterson was, in fact, the registered owner of the suspect vehicle in 2021[, but the name associated with the VIN did not match hers].

Forensic Investigator Karen Lyda was at Harrisburg Hospital at around the time of the dispatch call and was informed that [Abdullah] had come to the hospital with gunshot wounds. She ascertained that his wounds were to his left shoulder, left knee, and buttocks. In her capacity as a [f]orensics [i]nvestigator, she collected [Abdullah's] multi-colored boxer shorts and his black jeans.

Detective Jon Fustine [("Detective Fustine")] was dispatched to the shooting scene at approximately 5:00 p.m. After surveying the situation for about fifteen [] minutes, he proceeded to Harrisburg Hospital to speak with [Abdullah]. Detective Fustine, who knew [Abdullah] from an incident in 2012 when [Abdullah] was shot in the leg, met with him in his hospital room. In the years since 2012, Detective Fustine had seen [Abdullah] several times and was familiar with his appearance, including the distinctive limp he acquired after having been shot.

The police eventually obtained surveillance video from a school situated near the scene of the incident. The video footage, presented to the jury at trial, demonstrated the following:

1. An unknown individual began shooting at the red minivan as it was driving on Forrest Street, causing it to crash into a parked car.

2. [Abdullah] exited the minivan and returned fire. Muzzle smoke could be observed coming from the gun in his hand and casings could be seen hitting the ground.

3. Jaquest Kessler, an individual known to Detective Fustine as a friend of [Abdullah], and Jade Kessler, [his] mother, exited their home at 524 Forrest Street.

4. [Abdullah] met with the Kesslers and handed a firearm to Jade Kessler.

5. Jade Kessler turned the gun over to a male individual, identified as another one of her sons, who brought the gun into their house at 524 Forrest Street.

6. After viewing the video footage, Officer Kinsinger positively identified [Abdullah] as the individual operating the red minivan and identified that vehicle as the one he saw [Abdullah] driving only two and one-half [] weeks before.

The blood collected from inside the vehicle was sent to the Pennsylvania State Police ([″]PSP[″]) lab. The decision was made not to send the sample of the blood found on the asphalt outside the vehicle as it was determined to be less likely that the blood

outside the vehicle was the product of the incident in question. This conclusion was based, at least in part, on the fact that the blood outside the vehicle had already dried by the time the police arrived on scene.

The police obtained a sample of [Abdullah's] DNA to test against the collected blood samples. The blood found on the passenger arm rest and the third-row seat both matched [Abdullah's] DNA sample. In response to suggestions by [Abdullah] at trial that his injuries could have come from a different shooting than the one on Forrest Street, the Commonwealth presented uncontroverted evidence that no other shootings were reported at or around the same time.

Finally, [Abdullah] was convicted of Possession with Intent to Deliver a Controlled Substance [i]n March [] 2020, making him a person prohibited from possessing a firearm.

\* \* \* \*

On November 1, 2023, following a trial by jury, [Abdullah] was found guilty of persons not to possess firearms. [I]n January [] 2024, following the preparation of a Pre-Sentence Investigation Report (["]PSI["]), [the court] sentenced [Abdullah] to term of incarceration of not less than eight and one-half [] nor more than seventeen [] years[, which is in the aggravated range of the sentencing guidelines].

On January 16, 2024, [Abdullah] filed a timely [p]ost-[s]entence [m]otion containing a [m]otion for [j]udgment of [a]cquittal[, in which he asserted the conviction was against the weight of the evidence,] and a [m]otion to [m]odify the [s]entence. On January 17, 2024, [the court] denied [Abdullah's] post-sentence claims for relief.

On January 29, 2024, [Abdullah] filed a [timely] [n]otice of [a]ppeal . . ..

Trial Ct. Op., 3/21/24, at 1-5 (paragraphs re-ordered; footnotes and citations to the record omitted).

As noted above, Abdullah's attorney has filed an application to withdraw along with an *Anders* brief. When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw. *See Commonwealth v. Garang*, 9 A.3d 237, 240 (Pa. Super. 2010). Pursuant to *Anders*, when counsel believes an appeal is frivolous and wishes to withdraw from representation, he or she must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined the appeal would be frivolous; (2) file a brief referring to any issues that might arguably support the appeal, but which does not resemble a no-merit letter; and (3) furnish a copy of the brief to the defendant and advise him of his right to retain new counsel, proceed *pro se*, or raise any additional points he deems worthy of this Court's attention.

*Commonwealth v. Edwards*, 906 A.2d 1225, 1227 (Pa. Super. 2006) (internal citation omitted). In *Santiago*, our Supreme Court addressed the second requirement of *Anders*, *i.e.*, the contents of an *Anders* brief, and required that the brief:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Once counsel has satisfied these technical requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous. *See Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Attorney Bradley's brief meets *Anders*' technical requirements. Our review discloses that Attorney Bradley stated in his application to withdraw that, having made a conscientious examination of the record, an appeal would be frivolous. *See* Mot. to Withdraw, 5/14/24. Attorney Bradley has also filed a brief summarizing the facts and procedural history, referring to issues that might arguably support the appeal, including challenges to the weight and sufficiency of the evidence as well as to the legality and discretionary aspects of sentencing, and explaining why these challenges are frivolous based on the governing law and the record. *See Anders* Brief at 13. Attorney Bradley has also indicated in his application to withdraw that he has served the brief on Abdullah, attached a certificate of service, and has explained to Abdullah that he has the right to retain new counsel or raise additional issues for this Court's consideration *pro se*. *See* Mot. to Withdraw, 5/14/24 at ¶ 4; *see also Anders* Brief at Ex. C (letter explaining Abdullah's rights). Accordingly, we proceed to conduct an independent review to determine whether the appeal is frivolous.

Attorney Bradley identifies the following issues in his *Anders* brief: (1) whether the sufficiency and weight of the evidence supported Abdullah's

conviction;[3] and (2) whether the trial court imposed an illegal sentence or abused its discretion at sentencing. ***See Anders*** Brief at 13.

Despite being distinct issues, the sufficiency and weight issues Attorney Bradley identifies both hinge on the evidence identifying Abdullah as the perpetrator; therefore, because of the common issue of fact, we will likewise address them together. Both issues revolve around whether Abdullah's conviction was supported by the circumstantial evidence of his identity as the shooter in the video footage, and not against the weight of the evidence, despite his assertion that his underwear in the video appeared to be different than that which he later wore to the hospital. ***See Anders*** Brief at 19-22.

Our standards of review for these two issues are as follows:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence[ ] concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most

---

[3] We note that our review of the record reveals no preserved challenges to the constitutionality of Abdullah's conviction. ***Cf***. ***Commonwealth v. Little***, 903 A.2d 1269, 1272-73 (Pa. Super. 2006) (constitutional challenges must be raised and preserved at trial and cannot be raised for the first time on appeal).

favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Rivera*, 238 A.3d 482, 495 (Pa. Super. 2020) (internal citation omitted).

Based on our review, we conclude the record supports Attorney Bradley's conclusion that these issues are frivolous, since the evidence was sufficient to establish Abdullah's identity as a person who fired a weapon on the evening in question, and his identification was not against the weight of the evidence. The evidence at trial established that the blood in his girlfriend's red minivan matched his DNA; and he was positively identified by Probation Officer Kissinger, from a review of surveillance footage, as the person exiting the van and then firing a gun. *See* N.T., 10/31/23, at 87-94, 98, 103-04, 117, 119. For these reasons, the evidence was sufficient to establish Abdullah's identity as the person in the video shooting a firearm, notwithstanding the fact that he appeared at the hospital in underwear that may have differed from that depicted in the video. For these same reasons, Abdullah cannot show the trial court abused its discretion in determining the

convictions were not against the weight of the evidence. ***See Commonwealth v. Robertson***, 874 A.2d 1200, 1206 (Pa. Super. 2005) (stating that the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence, and this Court may not weigh the evidence and substitute our judgment for the factfinder as long as the evidence was sufficient to prove the defendant's guilt).

Attorney Bradley identifies a second set of issues including whether the trial court imposed an illegal sentence and whether the court abused its discretion at sentencing.[4] The challenge to the discretionary aspects of sentencing arise from Abdullah's assertion that the trial court abused its discretion by finding aggravating factors and imposing an excessive sentence, when there was a mitigating factor, *i.e.*, that Abdullah was the victim in the shooting rather than the aggressor. ***See***, ***e.g.***, ***Anders*** Brief at 25.

Our standard of review for a challenge to the legality of sentencing is *de novo* and our scope of review plenary. ***See Commonwealth v. Perzel***, 291 A.3d 38, 45 (Pa. Super. 2023). An illegal sentence is one that exceeds statutory limits, or where the court is without jurisdiction or statutory authority to impose a given sentence. ***See Commonwealth v. Archer***, 722 A.2d 203, 209 (Pa. Super. 1998).

---

[4] Attorney Bradley did not develop an argument for the illegality of the sentence, but apparently included this issue to show that this was only one of two general bases for which Abdullah could appeal his sentence. We review the legality of Abdullah's sentence out of an abundance of caution.

It is undisputed that the trial court imposed a 102-to-204-month sentence of imprisonment for Abdullah's conviction for persons not to possess a firearm. *See*, *e.g.*, Sentencing Sheet, 1/4/23. The PSI reveals that the conviction is first-degree felony, with a statutory maximum of 240 months of imprisonment, and, with Abdullah's offense gravity score of eleven and his prior record score of five, the aggravated guideline range was 102 months. *See* PSI (unnumbered at 18); *see also* 204 Pa. Code § 303.16(a) (basic sentencing matrix); 18 Pa.C.S.A. § 1103(1) (setting the maximum sentence for a first-degree felony at twenty years of imprisonment). Because the trial court sentenced Abdullah within the statutory maximum, the sentence was not illegal. Therefore, any challenge to the legality of the sentence must fail.

For a challenge to the discretionary aspects of sentencing, our standard of review is abuse of discretion. *See Archer*, 722 A.2d at 211. "Discretion is abused when the course pursued [by the trial court] represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where *the law is not applied* or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Id*. (internal citation and quotations omitted).[5]

_____

[5]A challenge to the discretionary aspects of sentencing does not entitle an appellant to an appeal as of right; rather:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal[;] (2) whether the

*(Footnote Continued Next Page)*

In context of an aggravated-range sentence, this Court has explained:

> When imposing a sentence, the sentencing court must consider the factors set out in 42 [Pa.C.S.A.] § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. . . . Furthermore, a trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range. The sentencing court, however, must also consider the sentencing guidelines.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006)

(internal citations, quotations, and brackets omitted). Additionally, the trial court must state its reasons for the sentence on the record when imposing an aggravated-range sentence. *See Commonwealth v. Mrozik*, 213 A.3d 273, 278 (Pa. Super. 2019). It is impermissible for a court to consider factors already included within the sentencing guidelines "as the *sole* reason for

---

issue was properly preserved at sentencing or in a motion to reconsider and modify sentence[;] (3) whether appellant's brief has a fatal defect[;] and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code[.]

*Perzel*, 291 A.3d at 46. Where counsel files an *Anders* brief, this Court has not required a separate Rule 2119(f) statement. *See*, *e.g.*, *Commonwealth v. Zeigler*, 112 A.3d 656, 661 (Pa. Super. 2015). Here, Abdullah has timely appealed and also preserved in a post-sentence motion the claim that the trial court abused its discretion in imposing an aggravated sentence. *See* Post-Sentence Mot., 1/16/23, at ¶¶ 11-12. Additionally, a claim that the trial court erred by imposing an aggravated-range sentence without consideration of mitigating circumstances raises a substantial question. *See*, *e.g.*, *Commonwealth v. Smith*, 206 A.3d 551, 567 (Pa. Super. 2019). Therefore, we will consider the underlying question of whether there is any basis in the law or facts of this case to support Abdullah's intended challenge to the discretionary aspects of the sentencing.

increasing . . . a sentence to the aggravated . . . range. Trial courts are permitted to use prior conviction history and other factors already included in the guidelines *if[] they are used to supplement other extraneous sentencing information*." ***Shugars***, 895 A.2d at 1275 (emphasis in original" (internal citation and quotations omitted). ***See also Commonwealth v. Clemat***, 218 A.3d 944, 960 (Pa. Super. 2019) (holding that an aggravated range sentence is justified to the extent that the individual circumstances of the defendant's case are atypical of the crime for which the defendant was convicted, such that a more severe punishment is appropriate). Additionally, when a trial court has reviewed a PSI, it is presumptively aware of, and has considered, the relevant information, including the defendant's mitigating statutory factors. ***See Commonwealth v. Burns***, 765 A.2d 1144, 1151 (Pa. Super. 2000).

Here, in imposing sentence, the trial court explained:

> . . . I . . . not[e] . . . the comments that were made by the Commonwealth pointing out that this is not just a firearms prohibited [case], although his prior record is calculated within the guidelines, it doesn't necessarily reflect the way his history is interwoven into this situation he finds himself now, which is a very violent type of life he has lived.
>
> Whether he was shot, shot at, shooting at, carrying firearms, dealing drugs, the whole nine yards[, it] is all interrelated and interwoven to such a degree that we now have shootings going on in broad daylight. This isn't in a back alley over a deal gone bad. This is much more than that. And it's much more egregious than that.

N.T., 1/4/24, at 8.

In sum, the trial court, in possession of Abdullah's PSI—and thus presumptively aware of and considered Abdullah's mitigating circumstances— explained that the aggravated sentence was justified in light of the unusual circumstances of his persons not to possess conviction, *i.e.*, that Abdullah not only possessed a firearm despite it being unlawful for him to do so, he used the firearm in a shooting in a public place in "broad daylight," notwithstanding the fact that he was shot at and shot in return. ***See Clemat***, 218 A.3d 944, 960 (Pa. Super. 2019) (aggravated range sentence is justified to the extent that the individual circumstances of the defendant's case are atypical of the crime for which the defendant was convicted). Thus, the record supports Attorney Bradley's conclusion that Abdullah's challenge to the discretionary aspects of sentencing is frivolous, given our determination that the trial court did not abuse its discretion.

In sum, our independent review of the record confirms that Abdullah's intended issues are frivolous, and our review reveals no additional issues of arguable merit. Accordingly, we grant Attorney Bradley's application to withdraw and affirm the judgment of sentence. ***See Yorgey***, 188 A.3d at 1197.

Application to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/07/2025